WERDEGAR, J.,
Concurring.—I concur in the result and most of the reasoning of the majority opinion. I write separately to address the prosecutor’s comments on proof beyond a reasonable doubt, which in my view were not merely incomplete but a misstatement of that standard. I also explain my view of why the trial court did not err in admitting evidence of the statement codefendant Rodrigo Bernal made to his nephew Oscar Tejeda.
As the majority acknowledges (maj. opn., ante, at p. 130), for a prosecutor to misstate the law in argument to the jury is improper and constitutes misconduct; this is particularly true of the standard of proof beyond a reasonable doubt, which fundamentally defines the People’s burden at trial. (People v. Centeno (2014) 60 Cal.4th 659, 666 [180 Cal.Rptr.3d 649, 338 P.3d 938]; People v. Hill (1998) 17 Cal.4th 800, 829 [72 Cal.Rptr.2d 656, 952 P.2d 673].) To establish such misconduct, bad faith or intentional misrepresentation is not required. For that reason, this type of “misconduct” could more aptly be termed prosecutorial “error.” (People v. Centeno, supra, at pp. 666-667; People v. Hill, supra, at p. 823, fn. 1.)
In this case, the prosecutor erred—most likely unintentionally—by misde-scribing the standard of proof beyond a reasonable doubt to the jury. Responding to a defense argument that overstated the burden of proving guilt beyond a reasonable doubt (see maj. opn., ante, at pp. 132-133), the prosecutor stated: “The court told you that beyond a reasonable doubt is not proof beyond all doubt or imaginary doubt. Basically, I submit to you what it means is you look at the evidence and you say, 7 believe I know what happened, and my belief is not imaginary. It’s based in the evidence in front of me.’. . . That’s proof beyond a reasonable doubt.” (Italics added.)
The vice in the prosecutor’s explanation was that it reversed the standard of proof beyond a reasonable doubt, telling the jury that their belief in guilt *135 need only be nonimaginary, rather than that the evidence must exclude all reasonable doubts. As we explained in People v. Centeno, supra, 60 Cal.4th at page 672, where we disapproved a similar prosecutorial argument, a statement that the jury must set aside unreasonable inferences is permissible, but does not itself describe the standard of proof: “It is not sufficient that the jury simply believe that a conclusion is reasonable. It must be convinced that all necessary facts have been proven beyond a reasonable doubt.” Contrary to the prosecutor’s argument here, a belief that is “not imaginary” and is “based in the evidence” does not necessarily meet the beyond a reasonable doubt standard. By suggesting that the People’s burden was satisfied if the evidence supported a reasonable, nonimaginary belief in guilt, the prosecutor erred.
The majority characterizes the prosecutor’s remarks as “correct” but “incomplete.” (Maj. opn., ante, at p. 131.) This is a bit like describing the maiden voyage of the Titanic as “incomplete.” The essence of the proof beyond a reasonable doubt standard is its specification of a particular level of certainty on the fact finder’s part; omitting mention of that level from an explanation of the standard, as the prosecutor did here, makes the explanation not merely incomplete but wrong. “Proof to a nonimaginary degree” is not equivalent to proof beyond a reasonable doubt, and the prosecutor erred in saying it is.
To establish a claim for prosecutorial misstatement of the law, defendant must, as the majority states (maj. opn., ante, at p. 130), show a reasonable likelihood that the jury understood the comments in an erroneous manner. (People v. Centeno, supra, 60 Cal.4th at p. 667.) The majority finds no such reasonable likelihood here when the prosecutor’s remarks are viewed in the context of the court’s correct instructions on proof beyond a reasonable doubt, the admonitions given the jury that it must follow the law as provided in the court’s instructions over anything contrary in counsel’s arguments, and portions of both attorneys’ arguments that referred to and quoted the court’s instructions on the standard of proof. (Maj. opn., ante, at pp. 131-133.)
In a case where the prosecutor’s challenged remarks were ambiguous, so that they could reasonably have been taken in either a proper or objectionable manner, examining the context to determine how the jury would likely have understood them makes sense. But this is not such a case. The prosecutor’s statement that proof beyond a reasonable doubt “means” that “you look at the evidence and you say, T believe I know what happened, and my belief is not imaginary’ ”is unambiguous, and unambiguously wrong. Notably, the majority does not attempt to say how this remark reasonably could be understood in an unobjectionable manner.
The contextual factors the majority brings forward are, however, persuasive as to the lack of prejudice from this prosecutor’s misstatement of the law. The *136 prosecutor’s isolated misstatement clearly was not so extensive and egregious as to render the trial fundamentally unfair, infringing on defendant’s federal due process rights. The misstatement violated only California law against the use of deceptive methods in jury argument, making it subject only to the prejudice standard generally applicable to state law trial errors, whether a reasonable probability exists the error affected the jury’s verdict. (People v. Hill, supra, 17 Cal.4th at p. 819; People v. Espinoza (1992) 3 Cal.4th 806, 820-821 [12 Cal.Rptr.2d 682, 838 P.2d 204].) Consequently, for the same reasons the majority finds no reasonable likelihood “the jury construed or applied the prosecution’s challenged remarks in an objectionable fashion” (maj. opn., ante, at pp. 133-134), I would find no reasonable probability the prosecutor’s misstatement of the law affected the jury’s verdict.
With respect to the admission of evidence that codefendant Bernal told Tejeda that one of his cohorts drove the car used in the shooting and identified defendant by name as the driver, I agree with the majority that the trial court did not abuse its discretion under Evidence Code section 1230. (Maj. opn., ante, at p. 128.) But unlike the majority, I would rely only on the inculpatory value for Bernal of linking himself to defendant and her car, knowing she had been arrested in that car. (Maj. opn., ante, at pp. 126-127.) The fact that Bernal’s identification of a criminal companion as the driver provided evidence of an overt act in furtherance of a conspiracy (maj. opn., ante, at p. 126) provides, in this factual context, too weak a connection to criminality to be considered disserving of Bernal’s penal interest under Evidence Code section 1230. Knowing that the conspiracy to shoot rival gang members had actually borne fruit in a shooting, which Bernal himself committed, a reasonable person in Bernal’s position would not have considered it incriminating to admit that another person had committed a preparatory act in furtherance of the conspiracy.
I concur in the judgment.
Liu, J., and Cuéllar, J., concurred.